UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| CHAMPAIGN-URBANA HEALTHCARE, LLC D/B/A CAMPUSTOWN URGENT CARE, THOMAS J. PLIURA, M.D., J.D., and Steve J. McLaughlin, <br><br> Plaintiffs, <br><br> vs. <br><br> JULIE A. PRYDE, individually and as Administrator of the CHAMPAIGN-URBANA PUBLIC HEALTH DISTRICT, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No _____ |

**COMPLAINT FOR INJUNCTIVE RELIEF**

NOW COME the Plaintiffs, CHAMPAIGN-URBANA HEALTHCARE, LLC, d/b/a CAMPUSTOWN URGENT CARE, THOMAS J. PLIURA, M.D., J.D., and STEVE J. MCLAUGHLIN, complaining of Defendants, JULIE A. PRYDE, individually and as Administrator of the CHAMPAIGN-URBANA PUBLIC HEALTH DISTRICT, respectfully state as follows:

**The Parties**

1. Plaintiff CHAMPAIGN-URBANA HEALTHCARE, LLC, d/b/a CAMPUSTOWN URGENT CARE (hereinafter "Campustown") is an Illinois limited liability company located in Champaign, Champaign County, Illinois engaged in the business of operating an urgent care medical clinic serving the residents of the Champaign-Urbana community and, due to its location, the students, faculty and staff of the University of Illinois and other residents, workers and visitors to the campustown area of Champaign-Urbana.

1

2. Plaintiff Thomas J. Pliura, M.D., J.D., is an Illinois-licensed physician and attorney, engaged in the practice of medicine at Plaintiff Campustown.

3. Plaintiff Thomas J. Pliura, M.D., J.D. provides evaluation, consultation and treatment to patients covered under the federal Medicare program and the Medicaid program.

4. Plaintiff Steve J. McLaughlin is a citizen of Illinois, a resident of this District and is, as of this filing, asymptomatic of common Covid-19 symptoms. He is desirous of obtaining Covid-19 testing from Campustown and Pliura to ascertain his status with respect to infection with the virus.

5. Defendant JULIE A. PRYDE is the administrator of CHAMPAIGN-URBANA PUBLIC HEALTH DISTRICT and is a public health official acting under the authority of the CHAMPAIGN-URBANA PUBLIC HEALTH DISTRICT, the CHAMPAIGN COUNTY BOARD OF HEALTH and the CHAMPAIGN COUNTY PUBLIC HEALTH DEPARTMENT.

**Jurisdiction**

6. This Court has jurisdiction over the subject matter of this dispute under 28 U.S. Code § 1331, as Plaintiffs have raised a Federal Question as to the depravation of the Federal Statutory and Constitutional rights by official state action.

**Venue**

7. Venue is proper in this District under 28 U.S. Code § 1391(b)(1) and (2).

**Facts**

8. The Champaign-Urbana community, state of Illinois and indeed the world are suffering under the effects of a worldwide pandemic caused by a highly communicable viral illness known as Novel Coronavirus 2019 or "Covid-19".

9. As of this filing, there have been over 1,329,000 confirmed diagnoses of Covid-19 infections worldwide and over 73,800 deaths. In the United States there have been over 356,000 confirmed cases and over 10,000 deaths. In the state of Illinois there have been over 11,000 confirmed cases and 274 deaths.[1] These numbers continued to rise exponentially.

10. Even with aggressive and unprecedented stay-at-home orders, it is presently estimated by federal officials that there may be between 100,00 and 240,000 deaths in the U.S. alone due to the Covid-19 pandemic.

11. There is available a laboratory test to determine active infection of Covid-19. The test involves the gathering of a sample from the nasal passage of the patient by a physician or other qualified healthcare provider and preserving and transporting that specimen to a qualified laboratory under strict protocols.

12. Throughout the pandemic, there has a been a shortage of available testing capacity. However, working with the U.S. Coronavirus Task Force headed by the President and Vice President of the United States, major national laboratories, including Quest Diagnostics and LabCorp have exponentially increased their respective capacities to process and report Covid-19 tests.

13. Campustown and Dr. Pliura have been administering Covid-19 tests, to be processed and reported by Quest and LabCorp, since early March 2020, and both Campustown and Dr. Pliura have established relationships with these federally approved national labs.

14. However, due to the exponentially increased demand for testing, and the highly transmissible nature of the virus, the most efficient and clinically appropriate method for

---

[1] https://www.worldometers.info/coronavirus/

3

community testing is currently understood to be through a "drive-through" process, where patients are swabbed by a physician or other qualified healthcare provider from their automobiles or other outdoor walk-up process, with no other contact or exposure. These drive-through/walk-up outdoor testing facilities are being implemented around the U.S., including in Champaign-Urbana.

15. On or about March 30, 2020, Campustown made arrangements to conduct drive-through/walk-up outdoor testing from the area outside its clinic at 631 E. Green Street, Champaign, IL. Those arrangements included expending great sums of money to buy test collection materials, hiring additional temporary staff, and creating a custom-designed patient registration computer system to allow for pre-registration of testing patients, thereby minimizing direct contact during the collection process.

16. However, due to the tremendous community need and desire for Covid-19 testing and because of road construction in the area around the clinic, arrangements were made to move the site of the drive-through testing to the paring area of the State Farm Center on the University of Illinois campus. Final approval of that location, however was not obtained.

17. Thereafter, on March 31, 2020, Campustown reached an agreement with First Christian Church of Champaign to conduct the drive-through testing in the church parking lot.

18. Campustown then publicly advertised the availability of the testing to begin on April 1, 2020 at the church site.

19. Upon learning of Campustown's plans, Defendant Pryde and others at C-UPHD undertook efforts to prevent Campustown from conducting its drive-through testing, including raising false, contrived and pretextual concerns with officials at the church.

20. Among said, false, contrived and pretextual concerns, Defendant Pryde and others at C-UPHD made baseless accusations concerning the cost of the testing, vague assertions concerning whether unidentified "guidelines" would be followed and asserting that, "first of all, there is just no unfettered access to testing in this country".[2]

21. Thereafter, Campustown made arrangements to hold its drive-through testing at several other locations in the Champaign-Urbana community, agreeing in principle with the property owners or managers, only to have those tentative agreements rescinded after the owners/managers had communications within one or more Defendants who raised various "issues".

22. While continuing its efforts to secure another suitable location in Champaign-Urbana to conduct its drive-through testing, Campustown and Pliura continued to do testing from outside its clinic location in Champaign.

23. Campustown has expended great sums of money to purchase testing supplies, to create necessary custom software programs to manage high-volume testing, and to advertise the availability of testing services.

24. Then on April 6, 2020 at approximately 1:25 PM, Plaintiff Pliura spoke personally with Defendant Pryde by telephone to determine if Defendant would oppose Plaintiffs' efforts to conduct the drive-up and walk-up testing services at Campustown's Champaign clinic.

25. In that conversation, Defendant Pryde indicated that she did oppose the proposed testing. Under Defendant Pryde's restrictions, Plaintiff McLaughlin is not eligible to be tested.

26. Other healthcare providers in the community are being allowed to perform testing on some individual patients without interference from Defendants.

---

[2] As reported by the Champaign News-Gazette online edition, April 1, 2020.

27. Under the 14th Amendment to the U.S. Constitution, Plaintiffs Campustown and Pliura have a liberty and property interest in performing their professional business services that cannot be deprived by Defendants without due process.

28. Similarly, under the 14th Amendment to the U.S. Constitution, Plaintiffs Campustown and Pliura have a Constitutional right to equal protection under the law.

29. Under the 14th Amendment to the U.S. Constitution and the *Families First Coronavirus Response Act*, PUBLIC LAW 116–127—MAR. 18, 2020, Plaintiff McLaughlin has a Constitutional and statutory right to access healthcare from a willing provider, including, specifically, the right to obtain Covid-19 testing and all other applicable benefits under the Act. The denial of that right constitutes a violation of Plaintiff McLaughlin's due process and equal protection rights.

30. Defendants have no authority under any state law, county or city ordinance or state or federal emergency declaration to bar independent state-licensed physicians from practicing medicine.

31. Defendants have no authority under any state law, county or city ordinance or state or federal emergency declaration to regulate the consumer price of Covid-19 testing as that issue is addressed fully by the *Families First Coronavirus Response Act*, PUBLIC LAW 116–127—MAR. 18, 2020, which requires reimbursement with no patient out-of-pocket co-pay or deductible for all privately insured or Governmentally-insured patients and full reimbursement by the Federal government for uninsured patients.

32. Defendants have no authority under any state law, county or city ordinance or state or federal emergency declaration to determine whether a patient can or cannot receive Covid-19 testing from a licensed physician and qualified lab.

33. The Center for Disease Control has established that any licensed physician is authorized to work with national laboratory companies, such as Quest and LabCorp to perform diagnostic testing on patients.

34. At no time have Plaintiffs Campustown or Pliura violated any state law, county or city ordinance or state or federal emergency declaration in the performance of Covid-19 testing.

35. No proposal by Plaintiffs to conduct drive-through or walk-up testing, scuttled by the actions of Defendants, violated an any state law, county or city ordinance or state or federal emergency declaration.

36. More compellingly, the actions of Defendants are jeopardizing the health of the community and needlessly risking lives.

37. Performing diagnostic testing inside a closed building creates an increased risk to patients and health care staff, as recent studies now show that positive patients can transmit the virus by respiratory exhalations, and these exhaled virus particles can remain in the air within a closed room for many hours. As such, across the country steps are being taken to offer screening outside of a closed building to decrease the risk to patients, provider and staff.

38. There is no question that there is an urgent need for more Covid-19 testing in the community.  On April 1, 2020, there were 35 to 50 cars lined up ready to be tested when, under the direction of Defendant Pryde and C-UPHD, officials from the church withdrew their agreement to permit the drive-through testing on the church premises.

39. Champaign County is one of the leading counties in Central Illinois with patients testing positive for Coronavirus.

40. The national news media is replete with stories of the importance of more testing.

41. Greater testing leads to more data of this novel virus, more effective social distancing, more effective quarantining, better utilization of soon-to-be overwhelmed hospital resources and ultimately, saved lives.

42. Additionally, testing of minimally symptomatic patients and asymptomatic patients will assist in the creation of a much larger pool of patients with laboratory-confirmed Covid-19 infections who have since recovered, allowing for their blood plasma to be utilized for the harvesting of antibodies highly useful in treating active infections.

43. Community Blood Services of Illinois, the regional blood products provider for this District, announced on April 4, 2020 that it will begin recruiting donors who have tested positive for COVID-19 and have been recovered for at least 14 days.  These donors have the antibodies to help fight COVID-19.  The treatment, known as convalescent plasma therapy, has been used in recent years to treat victims of Ebola, SARS and H1N1 influenza.  CBSI CEO Mike Parejko was quoted by the News Gazette newspaper as stating, "Our teams have moved quickly to develop processes and protocol to provide convalescent plasma for the hospitals we serve. While this treatment is not a cure, it might help alleviate the symptoms patients experience with COVID-19.  If we can help take a patient off a ventilator or get them out of the hospital, it will help patients return to good health and free up precious resources when they are needed most."[3]

44. Conversely, Defendants' unauthorized and unjustified actions in blocking the testing will not only cause irreparable harm to Campustown's and Pliura's professional reputation

---

[3] https://www.news-gazette.com/coronavirus/coronavirus-response-community-blood-services-seeking-donations-from-recently-recovered/article_ad752218-7b8d-54d5-88e7-0b849d24b4a9.html

and prospective business, but will directly harm Plaintiff McLaughlin, and the public and ultimately cost lives.

45. For a party to obtain injunctive relief, it must demonstrate (1) it has a certain and clearly ascertainable right which must be protected; (2) it will be irreparably injured in the absence of that protection; (3) it has no adequate remedy at law for its injury; and (4) it is likely to be successful on the merits. *Lumbermen's Mut. Cas. Co. v. Sykes*, 384 Ill. App. 3d 207.

46. Here, Plaintiffs Campustown and Pliura have clearly ascertainable rights to perform their professional services and Plaintiff Doe has a clearly ascertainable right to obtain those services.

47. Defendants' unauthorized and unwarranted interference with Plaintiffs' rights are causing irreparable harm to Plaintiffs and to the community at large, harm that could foreseeably result in patient deaths or significant morbidity.

48. There is no adequate remedy at law for these injuries.

49. Plaintiffs are likely to succeed on the merits because, and shown above, Defendants have unconstitutionally infringed upon Plaintiffs' rights, as described above and, with respect to Campustown and Pliura, Defendants have tortuously interfered with Plaintiffs' prospective business relationship and have painted Plaintiffs in a false light, damaging their professional reputations.

50. By reason of the worldwide pandemic and the exponential growth of the spread of the virus, there is a compelling immediate need for expedited interim relief in the form of a temporary restraining order, barring Defendants from interfering with or falsely communicating about Plaintiffs' Covid-19 testing, at any suitable location.

51. "The purpose of an injunction is to prevent future violations…" *Peoria Day Surgery Center v. OSF Healthcare System*, No. 06-1236, 2007 U.S. Dist. LEXIS 3962, at *11-12 (C.D. Ill. Jan. 18, 2007) citing *American Para Professional Systems, Inc. v. Labone, Inc.*, 175 F. Supp. 2d 450, 457 (E.D.N.Y. 2001) and *United States v. W.T. Grant Co.*, 345 U.S. 629, 633, 73 S. Ct. 894, 97 L. Ed. 1303 (1953).

WHEREFORE, by reason of the foregoing, Plaintiffs respectfully pray for a temporary restraining order, and thereafter, a preliminary and permanent injunction, barring Defendants from preventing, interfering with, or falsely communicating with anyone about Plaintiffs' Covid-19 testing.

Respectfully submitted this 6th day of April 2020,

s/THOMAS J. PLIURA_____
Thomas J. Pliura, M.D., J.D,
Individually and as attorney for
Champaign-Urbana HealthCare, LLC,
and Steve J. McLaughlin,
Plaintiffs
